## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

PHYSICIANS HEALTHSOURCE, INC.,   )
an Ohio corporation, individually and as the   )
representative of a class of similarly-situated   )
persons   )
   )
          Plaintiff,   )
   )   Case No. 1:12-cv-04978
          v.   )
   )   Hon. Charles P. Kocoras
ALMA LASERS, INC. and   )
JOHN DOES 1-10   )
   )
          Defendants.   )

## DEFENDANT ALMA LASERS, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE JUNE 18, 2014 DECLARATION OF ROBERT BIGGERSTAFF AND TO BAR USE OF DOCUMENTS PRODUCED AFTER CLOSE OF DISCOVERY

To support its Reply Memorandum in Support of Class Certification ("Reply"),

Physicians Healthsource, Inc.'s ("PHI") attached a June 18, 2014 Declaration of Robert

Biggerstaff ("Biggerstaff Declaration" or "Declaration") that raised a theory that contradicted

Biggerstaff's prior testimony and was based on a document that had not been produced during

discovery. Under Federal Rule of Civil Procedure ("Rule") 37, this blatant violation of Rule 26

mandates that the Declaration and arguments in the Reply relying on the Declaration be stricken

and PHI be barred from any other use of the documents produced after discovery closed and after

its Reply was filed.

## RELEVANT BACKGROUND

Over a year after the close of fact discovery, and over three months after the close of

expert discovery, PHI is attempting to introduce new documents—and a new expert declaration

opinion based on them—that were never produced in discovery. PHI's attempt is a desperate

effort to cure the obvious defects in its standing to bring the TCPA claim it asserts, which

preclude class certification, and should be rejected.

### PHI's Complaint and Discovery Relating to Fax Logs

PHI filed its Complaint on May 18, 2012, four years after it alleges it received the three

faxes on which its TCPA claim is based.[1]  The faxes were allegedly sent on July 22, 2008,

August 5, 2008, and August 19, 2008.

On February 21, 2013, Alma took the deposition of Kathy Curtis, PHI's office manager.

Curtis testified that she was familiar with the fax logs produced by PHI's two fax machines, that

the fax logs were maintained in the possession of PHI's attorney, and that PHI did not retain

copies:

> Q:  Does the fax machine print out ledgers?
>
> A:  Yes.
>
> Q.  *And what do you do with those fax ledgers?*
>
> A.  *They're mailed to Mr. Lowry, also.*[2]
>
> Q.  How often do you print out the fax ledgers?
>
> A.  They automatically come out.
>
> Q.  How often?
>
> A.  Three or four times a day, at least, maybe more.
>
> Q.  Do you remember when -- have you always provided fax ledgers to Mr. Lowry?
>
> A.  I can't remember.
>
> Q.  Did you provide fax ledgers to Mr. Lowry in 2008?

---

[1] Inexplicably, the day after PHI filed its Reply it produced to Alma an additional fax it claims to have received in October 2008—a fax that was not alleged in PHI's Complaint, not produced in discovery, and about which no witness ever provided any testimony.  The June 20, 2014 production has been labeled PHvAL-002486-002488.  PHI has not sought leave to file an amended complaint to include this fourth fax and, indeed, should it do so Alma would strenuously object given the untimeliness of this production and severe prejudice to Alma through the denial of any opportunity to investigate the fourth fax and the other new documents produced by PHI after the filing of its Reply.

[2] PHI sent all faxes "that don't pertain to the office" to the law office of Mr. Lowry in anticipation of bringing possible TCPA actions.  (Curtis Dep. at 23.)

    A.   I can't remember the date when we started doing that.

    Q.   Did you start doing that when you got a new machine or could that have been a reason why the ledgers –

    A.   That could have been.

    Q.   Do you remember when the last time you upgraded your machine was?

    A.   About two or three years ago.

    Q.   Do you remember if the fax ledgers printed out before that new machine?

    A.   I can't remember.

    Q.   *Did PHI keep a copy of the fax ledgers?*

    A.   *No.*[3]

(Curtis Dep. (Dkt. 79-11)[4] at 42-43 (emphasis added); *see also* Curtis Dep. at 99-100.) Both at Ms. Curtis's deposition and by follow-up letter dated February 27, 2013, Alma requested that PHI produce the fax logs described by Ms. Curtis. (Curtis Dep. at pp. 100-01; Feb. 27, 2013 letter from E. Nathan to R. Kelly, attached hereto as Exhibit 1.) In response, PHI produced a ledger from its Private fax machine for July 22, and ledgers for both its Main and Private fax machines for August 5 and August 19, 2008. (Fax Logs, Filed Under Seal as Exhibit 3 to Alma's Opposition to Motion for Class Certification.)

    At no time after its initial production did PHI supplement its production of fax logs. Nor did PHI represent that it was only producing fax logs for certain times or only a portion of faxes received on those dates.

    On June 6, 2013, the Court issued an Order closing fact discovery. (Dkt. 52)

---

[3] Prior to Ms. Curtis's deposition, PHI's two principals testified that PHI did not retain any fax logs. (Elwert Dep. (Dkt. 79-12) p. 61; Ruch Dep. (Dkt. 79-16) p. 92). But for Ms. Curtis' candid testimony, Alma would not have known the logs existed.

[4] Certain exhibits referenced in this Motion have been previously provided to the Court as exhibits to Alma's Opposition to Motion for Class Certification, Dkt. 79. Where possible, Alma refers to the exhibits attached to its Opposition to avoid providing duplicative copies of deposition transcripts and other voluminous exhibits. Given the breadth of exhibits supporting Alma's Opposition, Alma also provided this court with an Appendix of Exhibits to Alma's Motion for Class Certification that includes all of the exhibits filed as part of Docket 79.

The existence, content, accuracy and interpretation of the fax logs were a major issue in expert discovery in early 2014. The logs PHI produced were reviewed by Alma expert Scott Kuperman and were a central focus of his report. (Kuperman Report (Dkt. 79-5) pp. 8-12) PHI's expert Robert Biggerstaff was questioned extensively about the logs at his deposition. (Biggerstaff Dep. (Dkt. 79-10) pp. 33-38.) Biggerstaff was asked directly whether the number 617-269-0559 (a number that PHI asserts is associated with Alma and that appears on the top of all three faxes) appeared on any of the fax logs that PHI produced for the dates in question:

> Q:   Do you see the number 617.269.0559 anywhere in the fax logs that are Exhibit 4?
>
> A:   No, I don't, and I wouldn't expect to because these were sent by Westfax.
>
> Q:   And what number did Westfax use to send them?
>
> A:   I don't know what number that they used to send them from. But *Westfax typically doesn't include a TSI in the faxes it sends.*
>
> Q:   So how do you know these faxes were sent from Westfax?
>
> A:   I believe that the evidence is enough to convince me *beyond any doubt that I have that Westfax sent these faxes* based on the contracts, based on the invoices and based on the emails, et cetera.

(Biggerstaff Dep. 38-39, emphasis added.)

### Class Certification Briefing, PHI's Late Attempt to Supplement its Production, and the New Biggerstaff Declaration

In its Motion for class certification, PHI asserted that it bases its claim on faxes allegedly sent by Westfax at Alma's direction, based solely on Westfax invoices. (Motion for Class Certification, at 4.) But PHI did not point to any transmission records showing that PHI received a fax from Westfax – because there are none. (PHI Mem. at 4; *see* Alma Opp. at 7.) As noted above, PHI's expert Biggerstaff testified that he would not expect any record of such faxes to

show up on a PHI fax log "beyond any doubt" because the faxes were sent by Westfax, "which doesn't include a TSI in the faxes it sends." (Biggerstaff Dep. at 38-39.)

On May 22, 2014, Alma filed its Opposition to PHI's Motion for Class Certification. Alma asserts in its Opposition that PHI does not have Article III standing to bring a claim against Alma, so there is no basis for findings of typicality, adequacy or predominance. (Opposition, pp. 5-9, Dkt. 79) Since the fax logs that were produced in discovery fail to show receipt of any fax from Alma or WestFax—coupled with the fact that the three faxes at issue show the name "M Raza Kahn MD" in the header and not PHI—Alma has a unique defense to PHI's standing to bring this suit and class certification would be inappropriate. (*Id.*)

PHI was granted an extension to file its Reply on June 19, 2014. Buried on page six of the Reply is a startling admission by PHI regarding its failure to search for and produce relevant documents in discovery:

> On June 17, 2014, Plaintiff discovered an additional fax log that demonstrates that the "August 19, 2008 9:23" timestamp corresponds to a fax log entry on August 19, 2008 at 11:27, which is consistent with a fax being sent from Mountain Time (WestFax is located in this time zone) with a receiving fax machine in Eastern Time (Plaintiff's fax machine is in this time zone). (Biggerstaff Decl. ¶ 12, Ex. 1)

(Reply, at 6) This admission is shocking for several reasons. First, Alma expressly requested in February 2013 all fax logs relating to the dates in question, and PHI—clearly aware of the existence of such logs—apparently decided to produce only *partial* logs for at least one of the days in question: August 19, 2008. (It is still not clear whether the logs for the other two days, July 22 and August 5, 2008 that were produced were for the entire day because PHI elected to produce the logs in redacted form, despite the existence of a Protective Order in this case.) Now, when it suits its purposes and over a year after the close of fact discovery, PHI asserts that it discovered an "additional fax log" showing additional entries for August 19, 2008.

Any suggestion that PHI had difficulty locating the new documents is belied by the timeline exposed in Biggerstaff's new declaration. Apparently, despite the fact that the fax logs were a central issue throughout expert discovery, PHI decided on June 17, 2014, two days before its Reply was due, to search its records for fax logs from the days Alma had already requested in February 2013. (Biggerstaff Declaration, at 3, ¶ 10 ("I therefore requested from Mr. Ryan Kelly on June 17, 2014 that the records for the expanded search ranges (above) be provided to me."))

Incredibly, PHI was then able in the span of less than twenty-four hours—from Biggerstaff's request on June 17 to the "discovery" that same day—to uncover an additional fax log it now claim proves the August 19, 2008 fax was received by one of PHI's fax machines. (Biggerstaff Decl, at 3, ¶ 10; Reply at 7.) PHI does not provide any explanation as to where the "new" materials were discovered, or why it did not search for them during fact discovery or during expert discovery when both side's experts opined on these very issues.

## ARGUMENT

### I. THE SUPPLEMENTAL BIGGERSTAFFF DECLARATION AND PHI'S REPLY SHOULD BE STRICKEN TO THE EXTENT THEY RELY ON DOCUMENTS NOT PRODUCED IN DISCOVERY

Courts may strike materials and arguments as a sanction for a party's failure to produce responsive documents or to supplement its production. Rule 26(e)(1)(A) requires:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .

Fed. R. Civ. P. 26(e)(1)(A). "Although Fed.R.Civ.P. 26(e) requires a party to supplement or correct disclosure upon information later acquired, that provision does not give license to

sandbag one's opponent with claims and issues which should have been included in the expert witness' report (indeed, the lawsuit from the outset)." *Butler v. Sears Roebuck & Co.*, No. 06-7023, 2010 WL 2697601, *1 (N.D. Ill. July 7, 2010) (*quoting Allgood v. Gen. Motors Corp.*, No. 02-1077, 2007 WL 647496, at *3-4 (S.D. Ind. Feb. 2, 2007)).

Rule 37 provides for sanctions when a party fails to comply with Rule 26(e), including:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), *the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.*

(Emphasis added.) "[T]he sanction of preclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Salgado v. General Motors, Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) (affirming district court's preclusion of expert witness from testifying based on egregious violations of Rule 26 and Court's scheduling order) (citations omitted); *see also Ciomber v. Cooperative Plus. Inc.*, 527 F.3d 635 (7th Cir. 2008) (affirming district court's preclusion of expert report; "The purpose of Rule 26(a)(2) is to provide notice to opposing counsel—before the deposition—as to what the expert witness will testify."); *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1231 (7th Cir. 1996) (affirming exclusion of expert's rebuttal charts produced long after deadline where delay in producing new evidence was not harmless or justified); *Butler*, 2010 WL 2697601, at *2 (excluding expert's new opinion on grounds that plaintiff had withheld opinion in original report and defendant relied on plaintiff not considering that to be an issue in case).

The Seventh Circuit applies the following factors in determining whether a violation of Rule 26(a) is justified or harmless: "(1) the prejudice or surprise to the party against whom the

evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of

disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence

at an earlier date." *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012) (quoting *David v.*

*Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

### A.    PHI Cannot Justify Its Violation of the Federal Rules

There is no justification for PHI's violation of Rule 26(e) where the documents in

question have been under their control[5] the entire time.  *See Salgado*, 150 F.3d at 743 (finding no

justification for delay "because discovery was closed in the case, the information contained in

the [expert's] supplemental report must have been available before the missed deadline.")

Moreover, PHI's delay is unjustified because the prejudice suffered by Alma due to this last-

minute disclosure is incurable.  After the close of fact discovery in June 2013, Alma raised the

issue of whether any number associated with it or WestFax appears on PHI's fax logs in expert

discovery.  (Kuperman Rep. Dkt. 79-5.)  Kuperman expressly opined that

> because the plaintiff is depending upon header information from the facsimiles
> attached to the complaint as Exhibit A to prove their case, and the fact that the fax
> logs as provided by the plaintiff do not indicate that any faxes of any type or
> nature were received with header information indicating a fax number of 617-
> 269-0559, or 'M RAZA KAHN MD' listed for these faxes, I cannot conclude that
> the defendant sent any facsimiles to the plaintiff on the dates shown on the logs
> produced by the plaintiff, *unless other fax logs or engines can be produced and
> then analyzed*.  (*Id.* at 12., emphasis added.)

Alma's expert report could not have been clearer as to the issue of whether PHI

possessed additional fax logs and engines in his report dated January 24, 2014.  Still, PHI did

---

[5] Kathy Curtis testified that she sent all of the fax ledgers to the same attorney that PHI sent all faxes it
deemed unsolicited, John Lowry.  Even if the fax ledgers remain in his possession, as an attorney for PHI
it would still be considered in PHI's control.  *See Margoles v. Johns*, 587 F.2d 885, 888 (7th Cir. 1978)
(affirming dismissal of case as sanction for plaintiff's failure to produce documents per court order,
explaining "the district court was amply justified in treating the failure of the son as that of the plaintiff.
Since Perry was the 'alter ego' of his father for purposes of documentary production, the court considers
the failure of the non-party as that of the party.")

nothing. Under no set of circumstances can PHI justify its delay in producing such a document until the day after filing its Reply.

Alma relied on the universe of discovery in this case in opposing class certification. PHI now seeks to counter Alma's standing arguments by producing new evidence long after discovery closed. There is simply no explanation—and PHI does not even attempt to provide one—as to why PHI would withhold a fax log in response to a specific request for all logs relating to the faxes at issue in this case. In fact, the deeper one looks at possible justifications, the more questions about PHI's conduct arise:

      a. Alma's request for the fax ledgers was not limited to a specific date or time ranges, so why did PHI chose only to produce certain logs? Why did PHI not make Alma aware of its unilateral decision to so limit its production?

      b. Some of the logs originally produced appear to be for full days, so how was the additional log for August 19, 2008 located, when full-day logs for the other days were apparently already produced?

      c. PHI has provided no explanation for why the logs it originally produced were redacted in the first place, particularly when a Protective Order is in place. The fax ledgers produced on June 20, 2014 are not marked "Confidential" or redacted, so why is this information being treated differently under the Protective Order?

      d. By its own admission, PHI was able to locate the "new" logs in just one day when requested by Biggerstaff (*see* Reply at 6; Biggerstaff Decl. at 3, ¶ 12). Where were the logs maintained that they could be accessed in less than one day? Or, was the report printed from the original fax machine, which PHI has represented no longer exists?

      e. Why would PHI have withheld the only log that actually includes the "617" area code number found on the headers of the faxes that are alleged in its Complaint?[6]

---

[6] On February 27, 2013 Alma's counsel sent a letter to reiterate the request made at Ms. Curtis's deposition and requested that PHI produce "fax ledgers that reference the faxes attached to PHI's Complaint at Exhibit A." (Exhibit 1 hereto, at 2.)

      f.   Are there additional logs for July 22 and August 5 and, if so, are they being withheld because they do not indicate any receipt of a fax from Alma or WestFax?  If these other logs do not exist, how did PHI or Lowry decide which logs to keep and which to discard?

These issues, and the fact that PHI had the "new" material under its control all along, certainly demonstrate "the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Tribble*, 670 F.3d at 760.  In light of these and other myriad questions raised by PHI's attempt to rely on a new document at this late stage, it cannot be the case that PHI's failure to produce the document was a mere oversight.  Rather, PHI's late production—not even at the eleventh, but at the thirteenth hour—appears to be a deliberate attempt to shield the documents it now purports to rely on from the discovery process and expert analysis.   Because there is no legitimate justification for its delay in producing these additional documents, the Court should accordingly strike the Reply and the supplemental Biggerstaff Declaration to the extent that either relies on the new documents that PHI has attempted to inject into the case long after the close of discovery.

## B.      PHI's Delay in Producing Evidence is Not Harmless

Nor can PHI overcome the mandatory sanction of exclusion on the grounds that the delay was harmless.  *See Salgado*, 150 F.3d at 743.  Based on the record adduced in discovery, Alma hired an expert to review the fax logs and confirm the fact that the faxes PHI claimed to have received were not shown on the logs it produced.  PHI then hired its own expert in response, who Alma traveled to depose and who confirmed that no number associated with Alma or WestFax was on these logs.  (Biggerstaff Dep., at 38-39.)  If allowed, the new documents on which PHI purports to rely would require further expert analysis, at significant cost to both parties.  Fact discovery and expert discovery will need to be reopened so Alma can further investigate the circumstances related to the discovery of the additional documents, any effect on Alma's

defenses, whether additional documents that could support Alma's position have been withheld, and the reversal of Biggerstaff's position that he "wouldn't expect to [see the 617 number on the log] because these were sent by Westfax" (Biggerstaff Dep. at 38), all which will cause significant additional delay and expense to Alma and the Court. For example, among other issues, Alma will seek to reopen discovery to explore:

    a.   The origin of the new August 19, 2008 log, the circumstances of its discovery, and why was not it produced in response to Alma's original request;

    b.   The authenticity of the August 19, 2008 log and the other new documents produced by PHI;

    c.   Whether the new August 19, 2008 log was printed from PHI's fax machine in response to the argument in Alma's Opposition to Motion for Class Certification that PHI cannot prove that it received any faxes from Alma; and, if so, why PHI has maintained that it no longer has possession of the fax machines; and

    d.   Whether the new August 19, 2008 log was in the possession of attorney Lowry since 2008; and if so, then Lowry will need to be deposed to determine where he has maintained the records, why he did not search for the fax logs after Alma's initial request and how he was able to locate this log in less than one day, two days before PHI's Reply was filed.

Given the extensive discovery and expert analysis that the parties previously conducted, based on the factual record that was fixed long before briefing on PHI's Motion for Class Certification commenced, and the additional discovery that will need to take place if the new documents and Declaration are permitted, PHI cannot show its delay is harmless. Moreover, the fact that PHI had the newly-produced documents in its control since the inception of this case demonstrates PHI's bad faith and willfulness in not disclosing this information sooner. The Court should therefore bar any reliance on the new documents and Biggerstaff's Declaration as a sanction for PHI's inexcusable delay.

### C.    Biggerstaff's Declaration Should Be Stricken Because It Is Untimely

Even if the new Biggerstaff Declaration were not based on evidence that PHI produced long after discovery closed, Biggerstaff's Declaration is itself untimely under Rule 26(a)(2) and it contradicts the testimony he provided in his deposition.  "The purpose of Rule 26(a)(2) is to provide notice to opposing counsel—before the deposition—as to what the expert witness will testify."  *Ciomber*, 527 F.3d at 642; *see also Council 31 v. Ward*, No. 87-C-356, 1995 WL 549022, at *1 (N.D. Ill. Sept. 12, 1995) (granting motion to bar expert's supplemental report where supplemental report "is substantively different than his earlier reports, uses different data and analyses, and in effect changes the plaintiff's theory of the case."); *Finley*, 75 F.3d at 1231 (affirming exclusion of expert's rebuttal evidence produced long after deadline because delay was not harmless or justified).

Here, Alma's expert witness explained in his report[7] that, based on the fax logs provided, there was no indication that PHI had received the faxes at issue.  (Kuperman Report, at 12.)  PHI has known since Alma produced its expert's report last January that Alma was raising the factual issue that none of the fax logs PHI produced showed any indication of receipt of a fax from Alma or Westfax.  Biggerstaff, PHI's expert, issued his report in response to Alma's expert's and then at his deposition confirmed there was no indication Alma had sent the fax and that he would not expect to see the (617) number on the log because that was not consistent with WestFax's practices.  (Biggerstaff Dep. at 38-39 (opining that "the evidence is enough to convince me beyond any doubt that I have that Westfax sent these faxes."))

Now, in direct contradiction of his prior testimony and without explanation, Biggerstaff claims that the newly "discovered" log shows a sender number with a (617) are code for one of

---

[7] Defendant disclosed its expert and his report first, to which PHI then responded.  Therefore, PHI's attempt to add a new expert declaration is not a rebuttal to any opinions by Alma's expert.

the faxes PHI alleges it received; where in his deposition he testified that a (617) number would not be found on the log because Westfax sent them. (*Compare* Biggerstaff Dep. at 38-39 to Declaration at 3, ¶ 12.) Biggerstaff's wholly contradictory opinion contained in the new declaration is therefore untimely and may not be used to controvert his earlier opinion that the (617) fax number would not be shown on PHI's fax logs.[8]

## CONCLUSION

The new documents on which PHI and its expert purport to rely should be disallowed as a basis for any argument or opinion relating to class certification or any other aspect of the case. PHI blatantly violated Rule 26(e)(1)(a), and the Court's orders setting discovery and expert discovery closure dates, by either failing to search for or deliberately withholding a critically relevant document until well after the close of fact and expert discovery.

In any event, the new documents and the factual issues that they raise underscore the fact that Alma has a unique defense to PHI's claims that preclude class certification. Should this Motion be denied, Alma will seek to reopen discovery to work to determine the origin, custody and interpretation of the newly produced documents, further highlighting that there are unique and complicated facts relating only to PHI's claims which preclude certification.

Date: July 1, 2014

Respectfully submitted,

ALMA LASERS, INC.


By:    /s/ Katherine Heid Harris
                 One of Its Attorneys

---

[8] Alma reserves all rights to challenge the substance of the newly produced documents if this Court allows their introduction.

John F. Kloecker
Katherine Heid Harris
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois  60606
(312) 443-0235 (J. F. Kloecker)
(312) 443-1713 (K. H. Harris)

**Certificate of Service**

I, Katherine Heid Harris, an attorney, state that I caused a true and correct copy of the foregoing document to be served on all persons and entities registered and authorized to receive such service through the Court's Case Management/Electronic Case Files (CM/ECF) system on July 1, 2014:

> Brian J. Wanca
> buslit@andersonwanca.com
> ANDERSON + WANCA
> 3701 Algonquin Road, Suite 760
> Rolling Meadows, Illinois  60008
>
> Ryan Kelly
> rkelly@andersonwanca.com
> ANDERSON + WANCA
> 3701 Algonquin Road, Suite 760
> Rolling Meadows, Illinois  60008


                                        /s/ Katherine Heid Harris