UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PHYSICIANS HEALTHSOURCE, INC., an Ohio corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 12 C 4978 |
| ALMA LASERS, INC. and JOHN DOES 1-10, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This matter comes before the Court on Plaintiff Physicians Healthsource, Inc.'s ("Physicians") motion for class certification pursuant to Federal Rule of Civil Procedure ("Rule 23"). For the following reasons, the Court denies Physicians' motion for class certification.

## BACKGROUND

Defendant Alma Lasers, Inc. ("Alma") is an Illinois corporation with its principal place of business in Buffalo Grove, Illinois. Alma is a global developer and manufacturer of laser devices for aesthetic and medical applications. Medical practitioners use Alma's products for noninvasive, aesthetic procedures such as hair

1

removal and leg vein treatment. To promote its products, Alma schedules seminars throughout the country targeted to medical professionals to highlight the benefits of using its technology. To ensure attendance at its seminars, Alma utilizes direct mail, emails, and faxes. To generate potential clients, Alma purchased contact lists of medical professionals from a third party, BrightPath Marketing Services, LLC ("BrightPath"). Alma would receive the contact information generated by BrightPath and put the contact information into their general customer list. When faxes were utilized to send out seminar advertisements, Alma contracted with WestFax, Inc. ("WestFax") to send its flyers to medical professionals. Alma would not send the contact lists generated from BrightPath directly to Westfax, so there was never a specific list purchased or used for the sole purpose of contacting customers by fax. Alma does not have a practice of maintaining records of the fax numbers which are used for a particular seminar. The invoices sent from WestFax to Alma reflect aggregate data, listing the total amount of faxes sent out over a particular time period, and do not identify any particular numbers to which faxes were sent.

Physicians, an Ohio corporation, is a healthcare provider engaged in chiropractic services. Physicians alleges that on July 22nd, August 5th, and 19th, of 2008 they received three identical faxes announcing an October 17, 2008 seminar in Columbus, Ohio, hosted by Alma. The header information for the faxes contained Alma's phone number and the recipient's name, M. Raza Kahn, M.D. Physicians

formerly employed Dr. Mohammad Raza Khan[1] ("Dr. Khan") as a pain management specialist. However, Dr. Khan left the practice in 2007, before the receipt of any faxes in 2008. The three faxes also have a manual date stamp on the front of the faxes because Physicians' employees routinely stamp the date on faxes it received. Despite a manual date stamp on the front of the faxes, Physicians does not have any record of an incoming fax being sent from Alma or WestFax. Likewise, Alma does not have any contact information for Physicians or Dr. Khan in any of its marketing databases or other records. Additionally, the three faxes do not contain Physicians' name or fax number associated with its business.

On March 18, 2012, Physicians filed a two-count class action complaint in the Circuit Court of the Nineteenth Judicial District in Lake County, Illinois. *Physicians Healthsource, Inc. v. Alma Lasers, Inc.*, Case No. 12-CH-2492. Physicians asserts both an individual claim and claims on behalf of a putative class, alleging that Alma's faxes violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and that it is liable for conversion for Alma's use of Physicians' fax machine, paper, ink toner, and employees' time. Alma removed the suit to this Court pursuant to 28 U.S.C. §1331. On November 11, 2014, this Court granted Alma's motion to strike Physicians' expert reports that were un-timely produced. On April 17, 2014, Physicians moved for class certification.

---

[1] Dr. Khan testified that the faxes were not addressed to him because he spells his name "Khan" and the name contained on the header of the three faxes is spelled "Kahn."

## LEGAL STANDARD

The requirements for class certification are embodied in Rule 23. A district court "may certify a case for class-action treatment only if it satisfies the four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one of the conditions of Rule 23(b)." *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 493 (7th Cir. 2012). On top of the Rule 23 requirements, class certification also requires, as a threshold matter, that the plaintiff prove that the class—and, by implication, the class definition—is "sufficiently definite that its members are ascertainable." *Id.* (citing *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006)).

"Rule 23 does not set forth a mere pleading standard," however. *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011); *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 811 (7th Cir. 2012) ("On issues affecting class certification, ... a court may not simply assume the truth of the matters asserted by the plaintiff. If there are material factual disputes, the court must 'receive evidence ... and resolve the disputes before deciding whether to certify the class.' ") (quoting *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)). Thus, a party who seeks to certify a class under Rule 23 "must affirmatively demonstrate his compliance with [Rule 23] that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S.Ct. at 2551.

Accordingly, the plaintiff must prove each disputed requirement by a preponderance of the evidence. *Messner*, 669 F.3d at 811.

While a district court "should not turn the class certification proceedings into a dress rehearsal for the trial on the merits," granting class certification is appropriate "only if, 'after a rigorous analysis,' the trial court is satisfied that the requirements of Rule 23 have been met." *Jamie S.*, 668 F.3d at 493 (quoting *Dukes*, 131 S.Ct. at 2551); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (recognizing that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question"). Inevitably, that "rigorous analysis" will sometimes involve delving into the merits of the plaintiff's case. *See Dukes*, 131 S.Ct. at 2551 ("Frequently, that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped."). A court may probe beyond the pleadings to make whatever factual or legal inquiries are necessary to determine whether class treatment is appropriate. *Szabo*, 249 F.3d at 677. In the end, the court has "broad discretion to determine whether certification of a class action lawsuit is appropriate." *Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971, 976 (7th Cir. 2011).

# DISCUSSION

Alma contends that Physicians' TCPA claim is subject to a unique or peculiar defense and, therefore, it cannot represent the putative class. *CE Design Ltd. v. King Architectural Metals*, 637 F.3d 721, 723 (7th Cir. 2011). Alma asserts that Physicians lacks standing to pursue its TCPA claim because the record is devoid of any evidence indicating that Alma sent Physicians any faxes, therefore negating the injury requirement of standing. Physicians counters that the evidence produced during class discovery is sufficient to establish an injury under the TCPA, conferring standing to pursue their claim. In the alternative, Alma contends if the Court does conclude that Physicians has standing to pursue its TCPA claims, that Physicians also cannot meet the threshold requirement of the putative class being ascertainable under Rule 23.

Alma's contention that Physicians is subject to a unique defense is actually an Article III standing argument posed as a bar to contest Physicians adequacy in representing the putative class. There has been ample debate concerning the propriety of a district court determining Article III standing of a class representative when faced with a class certification motion. In *Payton v. County of Kane,* 308 F.3d 673 (7th Cir. 2002), the Seventh Circuit invoked two U.S. Supreme Court cases in acknowledging the propriety, in certain circumstances, of addressing class certification before Article III standing and treating the class as a whole as the relevant entity for standing purposes. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), *Amchem Products*, *Inc. v. Windsor,* 521 U.S. 591 (1997). In *Payton,* six

named plaintiffs filed a class action against nineteen Illinois counties that had assessed arrestees a "bond fee" as a condition of their release, a practice allowed by Illinois statute. Even though the named plaintiffs resided in only two of the nineteen counties, the Seventh Circuit concluded that the district court erred in refusing to consider "whether these named plaintiffs may represent a class that includes people from the other [seventeen] named counties." *Payton*, 308 F.3d at 680. The question of class certification could precede an analysis of standing, the court observed, and then, "once a class is properly certified, statutory and Article III standing requirements must be assessed with reference to the class as a whole, not simply with reference to the individual named plaintiffs." *Id.* In ruling that a class action might well be appropriate, despite the apparent standing concerns, the court pointed out that the seventeen other counties "are following a common [state] statute (and this common factor assures that the representative has the same legal claim as the unnamed parties....)[.]" *Id.* at 681. The court concluded by emphasizing that the named plaintiff arrestees were not asserting standing to seek redress for an injury they did not share: "[t]hese putative representatives were personally injured *by the operation of the very same [Illinois] statute* that caused the injuries to all other members of the proposed class." *Id.* at 682 (emphasis added).

The basis for Physicians' claim differs significantly from the plaintiffs in *Payton*, due to Physicians eliciting the TCPA for redress as opposed to the plaintiffs in *Payton* challenging the validity of a state statute which they were injured by. *Id.*

Many district courts have not delayed in determining whether an Article III case or controversy was properly before them before addressing class certification issues. *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 09 C 3690, 2013 WL 4506000, at *6 (N.D. Ill. Aug. 23, 2013); *See also In re Potash Antitrust Litig.,* 667 F.Supp.2d 907, 923 (N.D. Ill. 2009), *vacated and remanded on other grounds sub. nom., Minn–Chem, Inc. v. Agrium Inc.,* 657 F.3d 650 (7th Cir. 2011) (dismissing antitrust claims related to mineral price fixing asserted in jurisdictions where the named plaintiffs had not suffered an injury; the court concluded that *Ortiz* "does not compel a district court to delay reviewing Article III standing issues until after class certification" but instead requires an "appellate court simultaneously facing both class certification and Article III standing issues [to] deal with Rule 23 issues first when they are dispositive"). We find that it is proper to resolve Physicians' Article III standing to maintain its TCPA claim after engaging in a class certification analysis.

### A. CLASS CERTIFICATION

We are mindful of the Seventh Circuits guidance to keep our inquiry into Article III standing separate from a plaintiff's ability to satisfy the criteria of Rule 23. *Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008). While not an explicit requirement under Rule 23, the Seventh Circuit has held that a class definition "must be definite enough that the class can be ascertained." *Oshan*, 472 F.3d at 513. "To be ascertainable, a class must be identifiable as a class and membership within it must be determined by application of precise, objective criteria." *Bridgeview Health Ctr., Ltd.*

*v. Clark*, 09 C 5601, 2011 WL 4628744,*2 (N.D. Ill. Sept. 30, 2011); *see also Pawelczak v. Financial Recovery Services,* 286 F.R.D. 381, 385 (N.D. Ill. 2012). In other words, "there is a definiteness requirement implied in Rule 23(a)." *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977). In its class certification motion Physicians defines the putative class as: "All persons who (1) received, on a telephone facsimile machine, a fax transmitted between May 18, 2008 and October 17, 2011, (2) a fax that invited the recipient to attend at a seminar presented by Alma Lasers, and (3) which did not display a proper opt-out notice."

Alma contends that Physicians has not provided an objective way to determine which Alma customers and potential customers received the faxes at issue. Physicians relies on Alma's customer lists and the invoices sent by BrightPath and Westfax to Alma to determine the class members who fall into its class definition. The record is clear that Alma did not maintain a list of individuals that were solely contacted by fax. Alma's marketing director Karen Wheeler testified that Alma's customer list and BrightPath's marketing list were multifunctional and used for a variety of marketing purposes, not necessarily for contacting individuals by fax. Absent a "master list" of fax numbers, there is no evidence in the record that establishes which customers were sent Alma seminar faxes. Furthermore, the WestFax records show aggregate data of faxes sent and do not show individual fax numbers or dates, just the total number of faxes sent. In spite of the previously discussed deficiencies, Physicians cannot overcome the simple fact that it is not on

any of the lists possessed by Alma, Westfax, and BrightPath. There is also not a record of Dr. Khan on any customer list. Because the lists relied on by Physicians cannot be used to identify the class, class certification cannot be granted. Our determination in finding a lack of adequacy in deciding the parameters of a class is consistent with other district courts faced with the same inconsistencies. In *Saf-T-Guard International, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312 (N.D. Ill. 2008), a similar putative class action initiated suit under the TCPA, and the parties did not obtain a list of fax recipients and additionally did not have any information that would enable them to identify those recipients. As a result, the court did not certify the class because it found that there was no realistic way to identify potential class members. *Id.* at 315. Physicians has not been able to obtain fax transmission reports or any other lists of customers that might reliably illustrate the identity of the individuals Alma sent faxes too. Physicians has failed to meet its threshold requirement.

### B. STANDING

Standing ensures that the parties have a vested personal stake in the outcome of their case and guarantees that the court only adjudicates "cases and controversies." *Cabral v. City of Evansville, Ind.*, 759 F.3d 639, 641 (7th Cir. 2014). Article III standing enforces the Constitution's case-or-controversy requirement. *See Winkler v. Gates*, 481 F.3d 977, 979 (7th Cir. 2007). To establish Article III standing, "(1) a plaintiff must have suffered an 'injury in fact:' an invasion of a legally protected interest which is concrete and particularized, and actual and imminent; (2) there must

be a causal connection between the injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable decision." *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  The Article III standing inquiry remains the same even if the case is proceeding as a class action: "That a suit may be a class action, however, adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 40 n. 20 (1976); see also *Payton*, 308 F.3d at 682  ("[I]t bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action."). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.  Although Congress may not change a generalized grievance "into an individual right vindicable in the court," *Lujan*, 504 U.S. at 575, "Congress may create a statutory right or entitlement[,] the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." *Warth v. Seldin*, 422 U.S. 490, 514 (1975).

The TCPA was enacted in 1981 to address telephone marketing calls and certain unsolicited advertising practices that Congress found to be an invasion of a

consumer's privacy. *See Jamison v. First Credit Services*, 290 F.R.D. 92, 96 (N.D. Ill. 2013). The TCPA, in relevant part, provides that it is unlawful to use "any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(c).

The Seventh Circuit has not addressed the requirements of Article III standing in the context of a TCPA case. However, the Eleventh Circuit recently addressed the requisite level of injury a plaintiff must establish in a TCPA case to confer Article III standing. In *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 13 C 14013, 2015 WL 1004234 (11th Cir. March 9, 2015), the plaintiff initiated a TCPA case after a fax transmission report indicated its fax machine received an unwanted fax. The district court granted summary judgment in favor of the defendants due to the plaintiff's lack of injury. The district court reasoned that the plaintiffs had failed to show a sufficient injury because the only evidence indicating the transmission of a fax to the plaintiffs was an expert report confirming that a fax was sent to the plaintiffs. On appeal to the Eleventh Circuit, the court reversed the district court's grant of summary judgment after a detailed evaluation of Article III standing in the context of the TCPA. The court determined that, "[w]hile the record does not demonstrate that the fax advertising [d]efendant's dental practice was printed or seen by any of [the plaintiff's] employees, there is unrefuted record evidence that the fax information was successfully transmitted by [the defendant] fax machine and that the transmission occupied the telephone line and fax machine of [the plaintiff] . . . ." *Id.* at

12

*4. In gauging the injury suffered by the plaintiffs, the Eleventh Circuit relied on Congress' objective in enacting the TCPA. The legislative history of the TCPA reveals that its prohibition against sending unsolicited fax advertisements was intended to protect citizens from the loss of the use of their fax machines during the transmission of fax data. *See* H.R. REP. NO. 102-317, at 10 (1991). The Eleventh Circuit held that the occupation of plaintiff's fax machine is an injury intended to be prevented by the TCPA and the record of a transmission is sufficiently personal and individual to constitute an injury under the TCPA. *Palm Beach Golf Center-Boca, Inc.*, 2015 WL 1004234, *4. The Eleventh Circuit's analysis provides valuable guidance.

To prevail under the TCPA, a plaintiff must show that (1) a defendant used a telephone facsimile machine, computer or other device to *send* one or more faxes to plaintiffs' facsimile machines; (2) the faxes *sent* contained material advertising the commercial availability or quality of any property, goods, or services, and (3) plaintiffs did not give prior express invitation or permission for defendant to send the faxes. *Eclipse Mfg. Co. v. M and M Rental Center, Inc.*, 521 F.Supp.2d 739, 745 (N.D. Ill. 2007).

Physicians maintains that its claims are supported by sufficient evidence to establish an injury under the TCPA. In the absence of a record indicating Alma sent Physicians a fax, or conversely that Physicians possesses a fax log of incoming faxes from Alma or Westfax, Physicians is left to rely on three pieces of circumstantial

13

evidence to support its TCPA claim. Physicians asserts that it can establish an injury by relying on: (1) its physical possession of the faxed Alma seminar advertisements; (2) the manual date stamp marked on the faxes; and (3) the addressee of the advertisement being sent to a former employee of Physicians.

Although the physical possession of Alma's advertisement suggests the receipt of an Alma fax, the exact recipient of the fax remains in question despite Physicians' possession of the three faxes. First, the faxes were not addressed to Physicians but to another individual, M. Raza Kahn M.D. At the time the faxes were allegedly sent to Physicians, Dr. Khan had left his practice at Physicians many months before. Additionally, during discovery, Dr. Khan expressed some confusion concerning his receipt of a fax from Alma due to his lack of involvement with cosmetic laser procedures and the misspelling of his name. Dr. Khan even suggested that the fax header was possibly addressed to a different individual. The recipient information printed on the top of the Alma advertisements does not establish that Physicians was the recipient of the Alma advertisements.

The lack of transmission fax record presents a substantial hurdle to establish a link between Alma sending a fax, and Physicians receiving the fax, on the dates highlighted in Physicians' complaint. To surmount this obstacle, Physicians submits that the manual stamp present on the face of the faxes indicates Physicians' receipt of the faxes, on the days in question. However, Physicians' office managers which are responsible for receiving incoming faxes testified that they did not recognize the three

14

Alma seminar advertisements as being sent to Physicians' fax machine. Physicians' office managers exclusively rely on the manual date stamp on the faxes to attest to Physicians' receipt of the Alma faxes. Although a recipient of an unlawful fax does not have to be aware of the fax coming into their machine, there must be some record indicating that a fax transmission occupied its fax machine. *Palm Beach Golf Center-Boca, Inc*, 72015 WL 1004234,*4. Even though Physicians relies on the manual stamp to tie Alma's advertisements to their receipt of the faxes on the dates in question, the manual date stamp cannot solely serve as the basis for establishing Physicians' receipt of Alma's advertisements. Physicians' assertion that the manual stamps on the faxes represent a sufficient injury of an unlawful fax is contradicted by the evidence produced in discovery. There is an absolute lack of any fax transmission record indicating Alma or WestFax sent a fax to any of Physicians' fax numbers. This lack of a verified transmission sent from Alma to Physicians' fax machine is an essential missing link to Physicians' TCPA claim. In the absence of a record of transmission, we cannot find that Physicians' fax machine was "unavailable for legitimate business messages while processing . . . the junk fax." H.R. REP. NO. 102-317. Our determination conforms to various other TCPA rulings in which courts have found that the sending, the transmission, and receipt of an unauthorized fax constitutes a TCPA violation. *See, e.g. Chapman v. Wagner Equities, Inc.*, 747 F.3d 489, 492 (7th Cir. 2014) ("Whether or not the user of the fax machine is an owner, he may be annoyed, distracted, or otherwise inconvenienced if his use of the machine is

interrupted by unsolicited faxes to it, or if the machine wears out prematurely because of overuse attributed to junk faxes."); *Holtzman v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("To the extent [the defendant] contends that each recipient must prove that his fax machine or computer received the fax, [the plaintiff] is right on the law . . . ."); *Palm Beach Golf Center-Boca, Inc*, 72015 WL 1004234, *4. In the case at bar, no record exists of a fax transmission or the physical use of Physicians' fax machine. For this reason the Court concludes that Physicians has not established that it suffered an injury under the TCPA. Physicians lacks standing to pursue its TCPA claim.

### C. PHYSICIANS' ILLINOIS CONVERSION CLAIM

Having dismissed Physicians' TCPA claim, which the Court had original jurisdiction over, Physicians remaining conversion claim is based on Illinois law. *See* 28 U.S.C. § 1331. The Seventh Circuit has instructed that, "[t]he supplemental jurisdiction statute provides that the district court 'may decline to exercise supplemental jurisdiction' over state-law claims if the court 'has dismissed all claims over which it has original jurisdiction.'" *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (quoting 28 US.C. § 1367(c)(3)). Although the decision to exercise supplemental jurisdiction is within the district court's broad discretion, "[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co*., 672 F.3d at 479 (quoting *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010). The Court, in its

discretion, declines to exercise supplemental jurisdiction over the remaining state law claim and dismisses Count 2 of Physicians' complaint.

## CONCLUSION

For the aforementioned reasons the Court denies Physicians' motion for class certification due to its failure to provide an ascertainable class. Furthermore the Court finds that Physicians lacks Article III standing to pursue its TCPA claim. The Court declines to exercise supplemental jurisdiction over Physicians' Illinois state claim pled in Count 2.

Date: 3/31/2015  _____
Charles P. Kocoras
United States District Court Judge